A91A1399. LIBERTY NATIONAL LIFE INSURANCE COMPANY
v. COLEY.
(411 SE2d 553)

BEASLEY, Judge.

Employer/self-insurer Liberty National Life Insurance Company was granted discretionary appeal from the superior court's affirmance of an award of the State Board of Workers' Compensation. The Board had adopted in part an award by the ALJ directing Liberty to pay a

$25,000 lump sum penalty pursuant to OCGA § 34-9-221 (f) and Board Rule 221 (a) and (f) in favor of employee/claimant Coley. Liberty contends that the 20 percent penalty award as affirmed by the lower court is contrary to fact inasmuch as payment was received within 20 days after becoming due, and that it is contrary to law inasmuch as the Board held that an employer/insurer in making payment must consider such things as bank holding periods for negotiable instruments, thereby altering the due date for payment provided by law.

Coley suffered compensable injuries in 1986 while employed by Liberty. On December 5, 1989, the Board approved and made its order a stipulation and agreement between the parties. In full and complete satisfaction of any and all of Coley's claims, Liberty agreed to pay a lump sum of $125,000 (⅔ to Coley, ⅓ to Coley's attorney), with one year of open medical benefits for any further treatment.

On Thursday, December 21, Southern Risks Services, Inc., the third-party administrator for payment of benefits by Liberty, mailed the two settlement checks by UPS Next Day Air to Liberty's attorney in Savannah for forwarding to Coley's attorney. Liberty became aware that the checks would not arrive the next day because of a winter storm approaching the Savannah/St. Marys area. Consequently, Liberty had Southern Risks issue duplicates of the checks and send them directly by Federal Express to Coley's attorney in St. Marys. One of Liberty's attorneys personally delivered the duplicate checks to a Federal Express office and was assured that the checks would be delivered to Coley's attorney the following day, Saturday, December 23. When Liberty's attorney called Federal Express on Saturday, he was informed that the duplicate checks could not be delivered because the roads to St. Marys were closed. The attorney considered having a third set of checks issued and then personally driving them to St. Marys but Savannah police informed the attorney that all roads leading in and out of St. Marys were closed and extremely hazardous. Christmas Day, Monday, December 25, was the twentieth day after issuance of the stipulation and agreement. Coley's attorney received the checks the next day, Tuesday, December 26, at 4:06 p.m.

Coley claimed that the distances involved, the late hour of delivery, and bank holding periods prevented her from negotiating the checks on December 26 so that she did not receive timely payment, thus entitling her to the statutory penalty.

The ALJ and Board reasoned as follows. The method of payment of benefits is plainly set out in Board Rule 221 (a). *Dykes v. Superior Elec. Contractors*, 179 Ga. App. 793 (348 SE2d 120) (1986), requires that payment of benefits be received by a claimant within 20 days of an award. If an employer/insurer wishes to pay benefits by negotiable instrument, it must be done in time for the employee to receive pay-

ment, i.e., actually negotiate the instruments within the 20 days. The employer/insurer was required to take into account bank holding periods, etc., in calculating the time required in order for the claimant to receive timely payment.

1. The general computation of time provision of OCGA § 1-3-1 (d) (3) is applicable to certain proceedings under the Workers' Compensation Act. See, e.g., *Leavell v. Life Ins. Co. of Ga.*, 165 Ga. App. 770 (302 SE2d 623) (1983). It is the starting point for computing the 20-day mandate of OCGA § 34-9-221 (f). See, e.g., *Dykes*, supra (physical precedent). The twentieth day was Christmas Day, so payment of the settlement would have been timely on December 26. OCGA § 1-4-1.

2. The question is whether receipt of the checks by Coley's attorney on December 26 constituted payment within the contemplation of OCGA § 34-9-221 (f) and Board Rule 221 (a) and (f).

In the award, the ALJ cited and quoted former Board Rule 221 (a), which read: "Mail or deliver payment to the address specified by the claimant or the address of record. Make payment in cash or negotiable instrument in time for claimant to receive payment when due at a Georgia depository convenient to the claimant's address of record, if in Georgia." The reliance on *Dykes* for interpreting the former rule so as to require the payor to take into account extraneous factors over which it has no control is misplaced.

First, *Dykes* is physical precedent only and is not binding. Second, although *Dykes* concludes that "[t]he plain language of OCGA § 34-9-221 (f) and Rule 221 (a) and (f) mandates that payment of benefits be *received* by a claimant within 20 days of an award," id. at 794 (1), it makes no express or implied determination that receipt of negotiable instruments, which is an acceptable method of payment under the rule, does not constitute receipt of payment until actual negotiation. Requiring the payor to calculate into the 20-day payment period such factors as weather prognoses, banking hours and regulations, and the claimant's or attorney's cooperation in negotiating the instruments within the allocated time frame, defies reason and equity and effectively shortens the period the statute specifies.

The Board's later revision of the rule supports this interpretation of the earlier rule with respect to time and method of payment. By the time of the ALJ's decision on July 17, 1990, Board Rule 221 (a) had been revised, effective July 1, 1990, to read quite clearly: "Mail or deliver payment to the address specified by the employee or the address of record. *The payment shall be considered paid when mailed.* Make payment in cash or negotiable instrument so that the employee can receive payment the day of receipt at a Georgia depository convenient to the employee's address of record, if that address is in Georgia. . . ." (Emphasis supplied.)

The ALJ's interpretation as adopted by the Board and affirmed by the court, and the consequent assessment of a 20 percent statutory penalty against Liberty, was error as a matter of law.

*Judgment reversed. McMurray, P. J., and Carley, P. J., concur.*

DECIDED OCTOBER 15, 1991 —
RECONSIDERATION DENIED OCTOBER 24, 1991 —

*Oliver, Maner & Gray, I. Gregory Hodges, Patricia Tanzer*, for appellant.

*Eddings & Berry, Phillip M. Eddings*, for appellee.